# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

COULOMB SOLUTIONS INC.,

    Plaintiff,

vs.

WORKHORSE TECHNOLOGIES INC.,

    Defendant.

Case No. 2:24-cv-11048

Hon. Nancy G. Edmunds

---

# REPLY BRIEF IN SUPPORT OF
# PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Workhorse's meager response demonstrates that it has thrown in the towel on Coulomb's motion. By not offering any new evidence, Workhorse failed to establish a genuine issue of fact warranting a bench trial, leaving the following six material facts undisputed: (1) the 2021 Agreement is enforceable; (2) Workhorse failed to pay the Shortfall under the 2021 Agreement; (3) the unpaid Shortfall balance is $1,035,860; (4) the 2023 banket purchase orders and releases formed binding release-by-release contracts; (5) Workhorse breached the release-by-release contracts by failing to pay the contract price for goods accepted; and (6) the unpaid contract price under the release-by-release contracts is $2,952,620.

I.   **The Shortfall due under the 2021 Agreement remains undisputed.**

Workhorse unsuccessfully attempts to conflate the Shortfall due under the 2021 Agreement with the purchase of goods under the 2023 blanket purchase orders. In so doing, Workhorse ignores the simple undisputed fact that the 2021 Agreement was never terminated, Peters Tr. at 51:14-20, ECF No. 27-2, so the Shortfall remains owing. The only issue Workhorse raises is whether the Shortfall was excused by the parties' preliminary negotiations for a new supply agreement, which was never consummated. The unexecuted supply agreement under negotiation is unenforceable absent "conduct by both parties which recognizes the existence of such a contract." MICH. COMP. LAWS § 440.2204(1). Workhorse presented no evidence that either Coulomb or Workhorse performed under the terms of the unsigned

agreement. Indeed, Workhorse agrees that the new supply agreement was never executed because no meeting of minds was reached as to its terms. Peters Tr. at 105:14-106:1; Peters Declaration, ¶7; Dauch Tr. at 27:13-24.  Moreover, Workhorse failed to point out any provision in the written supply agreement under negotiation, let alone attach a copy of it, that would excuse the Shortfall.

Although Workhorse incorrectly cites the common law parol evidence rule rather than the governing UCC parol evidence rule, Mich. Comp. Laws §440.2201(1), parol evidence is still inadmissible to alter the 2021 Agreement because it is fully integrated. *UAW-GM Hum. Res. Ctr. v. KSL Recreation Corp.*, 228 Mich. App. 486, 502, 579 N.W.2d 411, 418 (1998) ("when the parties include an integration clause in their written contract, it is conclusive and parol evidence is not admissible to show that the agreement is not integrated except in cases of fraud that invalidate the integration clause or where an agreement is obviously incomplete 'on its face'"); ECF 27-4 at ¶34. Workhorse does not argue that the integration clause was procured by fraud or that the 2021 Agreement is incomplete, so its parol evidence of subsequent negotiations is inadmissible to vary the agreement.  Lastly, Workhorse did not contest that Coulomb is entitled to default interest at the contractual rate or attorney fees under the express terms of the 2021 Agreement. Thus, Coulomb is entitled to summary judgment in the amount of $1,035,860, plus contractual interest and attorneys' fees, for Workhorse's failure to pay the Shortfall.

## II. Peters' Testimony is Binding on Workhorse.

Employees having managerial responsibility give the employee the authority to "speak for, and bind, the corporation." *Ondricko v. MGM Grand Detroit, LLC*, No. 09-11073, 2010 WL 11679761, at *3 (E.D. Mich. May 27, 2010). A statement by a company's employee is admissible against the company if it was made by the employee on a matter within the scope of that relationship. Fed. R. Evid. 801(d)(2)(D). For an employee's statement to be received as an admission of the employer, it is only necessary to show "that the content of the declarant's statement concerned a matter within the scope of his agency." *Hill v. Spiegel, Inc.,* 708 F.2d 233, 237 (6th Cir.1983). *See also Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 722 (6th Cir. 2006) (employer bound by manager's statement within the scope of the manager's duties).

There is no doubt that Peters' testimony concerned matters within the scope of his duties. Peters is Workhorse's Vice President of Purchasing and Supply Chain Management who has direct responsibility for procuring goods. Peters Tr. at 11:13-12:19. He was authorized to approve purchase orders over $1 million, Peters Tr. at 26:14-17, and he personally authorized the issuance of the 2023 blanket purchase orders to Coulomb, Peters Tr. at 78:21-22. He was also authorized to sign supply agreements. Peters Tr. at 26:7-8. Workhorse itself even relies on Peters' declaration as admissible evidence in opposition to Coulomb's motion. Workhorse offered no

authority supporting its naked assertion that its own vice president's sworn deposition testimony is not binding on Workhorse.

### III. Workhorse Breached the Release-by-Release Contracts

Workhorse quibbles with the factual allegations in the complaint as to the details of the parties' contracts, but there exists no doubt that the Delinquent Invoices issued under the 2023 blanket purchase orders were a primary subject of the complaint and discovery or that Workhorse was aware of the basis for Coulomb's breach of contract claim. *See Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997) ("It is well-settled that the parties may constructively amend the complaint by agreeing, even implicitly, to litigate fully an issue not raised in the original pleadings"). Workhorse does not contest that it issued the blanket purchase orders and releases to Coulomb or that it accepted the goods delivered pursuant to those releases. The face of the blanket purchase orders included payment terms, a description of the goods, and the price per unit.[1] *See* PO1004113; ECF No. 27-5; PO1005286, ECF No. 27-6. Workhorse now concedes that "there is no dispute regarding the ***delivery, acceptance, and/or conformity of the goods***" delivered under those blanket orders. Workhorse Brief at p. 4 (ECF 29) (emphasis in original).

With the goods, price, and payment terms established through the blanket

---

[1] While Workhorse asserts that its purported general terms and conditions also apply, it failed to cite any provision in those terms that would excuse its breach, let alone produce a copy of them in opposition to this motion.

{38798/5/D1979052.DOCX;6} 4

purchase orders, the only other term necessary for an enforceable contract is quantity. The quantity term was supplied through Workhorse's releases. *See MSSC, Inc. v. Airboss Flexible Prod. Co.*, 511 Mich. 176, 183–84, 999 N.W.2d 335, 340 (2023); Peters Tr. at 78:3-7; Releases, ECF No. 27-14. Workhorse's blanket purchase orders and releases therefore constituted offers that Coulomb accepted by performance. Mich. Comp. Laws §440.2204(1); Timon Decl., ¶¶16-22.

Accordingly, enforceable release-by-release contracts exist. *MSSC, Inc.*, *supra*. Workhorse failed to raise any material factual dispute as to Coulomb's claimed damages for breach – the amounts in the Delinquent Invoices. Timon Decl. ¶ 23; Peters Tr. at 84-85, 94-98; Ginnan Tr. at 25-26; Dauch Tr. at 33-36. Thus, there remains no genuine issue of material fact that Workhorse breached the release-by-release contracts by failing to pay for goods accepted or as to the damages for breach. Further, Workhorse did not contest that Coulomb is entitled to pre-judgment interest on the Delinquent Invoices. Coulomb is therefore entitled to summary judgment in the principal amount of $2,952,620, plus pre-judgment interest, for breach of the release-by-release contracts.

Dated: January 2, 2025  **KERR, RUSSELL AND WEBER, PLC**

By: */s/ James E. DeLine* (P45205)
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
(313) 961-0200
jdeline@kerr-russell.com
*Attorneys for Coulomb Solutions, Inc*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 2, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all filing users indicated on the Electronic Notice List through the Court's electronic filing system.

By: */s/ Seneca Love-Shorter*